*Margin:* June Term, 1860.

RANNEY et al.
v.
HIGBY.

---

## RANNEY and another vs. HIGBY.

The construction or legal effect of the contract between the parties in this case, has been settled by former adjudications. 4 Wis., 154; 5 id., 62; 6 id., 28.

Where it became necessary on a trial, for the plaintiffs to produce and offer to the defendant a certificate of the receiver of an insurance company, showing the allowance of a claim for loss of certain salt, shipped by plaintiffs to defendant, and lost in a *storm*, and the plaintiffs, on the trial, produced the

certificate of said receiver, showing the allowance of a claim, but stating that it was for loss and damage by *fire*, on a marine policy, and there was some evidence before the jury tending to show that the certificate was the identical one issued for the loss of said salt: *Held*, that the recital in the certificate as to the cause of the loss, was not conclusive evidence that the claim certified to, did originate in a loss by fire, and an instruction to that effect, asked for by the plaintiffs, should have been given.

Plaintiffs sent to defendant a statement of their account, containing sundry charges, giving defendant credit for sundry payments, and showing a balance due the plaintiffs of about $400: *Held*, that plaintiffs were not bound, in bringing suit, to declare for the balance of the general account so exhibited, but might select a single item in their account not larger in amount than such balance, and sue therefor; especially as it appeared that the item selected was the only one in the whole account, about which there was any dispute between the parties.

APPEAL from the Circuit Court for *Milwaukee* County.

A full statement of the facts out of which this suit arose, may be found in 4 Wis., 154; 5 id., 62; and 6 id., 28; and it is deemed necessary to state here only so much of the evidence presented on the last trial, as gave rise to questions not previously decided by the supreme court in this case. The action was *assumpsit*, to recover the price of 350 barrels of salt, sold by the plaintiffs to the defendant, and shipped from Buffalo for Milwaukee, per schooner J. Patton, and lost on the voyage, in a storm. Declaration, the common counts for goods sold, with bill of particulars. Plea, general issue. The plaintiffs had been requested by the defendant to insure the salt for their benefit, and they caused it to be insured in the Utica Insurance Company, insuring at the same time some salt shipped by them on the same vessel to one *McKay.* The Insurance Co. adjusted the loss on both shipments, and gave their acceptance of *Ranney & Co.'s* draft for $643 75, the amount of both losses, payable May 25th, 1852. The Insurance Co. failed before maturity of the draft, and its assets were placed in the hands of Geo. S. Dana, receiver, who issued to *Ranney & Co.* a certificate, dated Jan. 14th, 1853, stating that they had exhibited to him a claim against the Utica Ins. Co., for loss and damage by fire of certain property, under a *marine* policy of said company, and certifying that said claim was allowed at $643,75, as of *May 25th,* 1852; the words in italics, and the figures, being written, and the rest of the certificate being in print. The following

indorsement was on the back of the draft; "Certificate given for this draft, January 14th, 1853, for $643,75. GEO. S. DA- NA, Receiver." On the trial, the plaintiffs' counsel produced, and offered to the defendant, the abovementioned draft and certificate, subject to *McKay's* interest therein, which defend- ant refused to receive, but read them in evidence.

A question was made before the jury, as to whether said draft and certificate were the identical ones which plaintiffs had received on account of the loss of said salt; and in- structions were given by the circuit court to the jury, upon that question, which will be found stated sufficiently in the opinion of the court. There had also been other dealings between the parties, and the defendant introduced on the trial, a statement of accounts, which the plaintiffs had sent to him under date of January 31st, 1852, which contained sundry charges for salt shipped to the defendant, includ- ing that shipped by the *J. Patton*, and for insurance and interest, amounting in all to $3,076,09; and gave the defendant credit for three drafts, one for $1,500, one for $800, and one for $400, striking a balance in favor of the plaintiffs, of $401,98; and also another statement of account sent to them by the plaintiffs, May 26th, 1852, in which the defendant was debited as follows:

1852:—

 Jan. 31.—To balance of account rendered, $401 98 .
   　　.　　To paid protest, etc.,　　.　　.　　1 70
 June 1.—To five months' interest on bal-
     ance of account,　　.　　.　　9 37

          $413 05

The circuit court, at the request of the defendant, instruct- ed the jury, among other things, as follows: 1. That the plaintiffs cannot, in this action, recover a general balance of account, and if the jury find that a draft was drawn against the value of the salt by the plaintiffs on the defendant, and was paid by the defendant, then the plaintiffs cannot recover, although there may be a general balance of account in their favor. 2. That if, in this case, an account existed between

June Term, 1860.

RANNEY et al.
v.
HIGBY.

the plaintiffs and defendant, and it appears to the jury that payments by the defendant have been made to a larger amount than the item sued for, the plaintiffs cannot recover. 3. That when the plaintiffs select certain items of a running account, and bring suit upon such items, it amounts, for the purposes of the suit, to a waiver of the other items; and upon proof by the defendant, of payments applicable to the entire account, to a larger amount than the item sued upon, he is entitled to a verdict.

To these instructions the plaintiffs excepted. The jury found for the defendant, and from the judgment on the verdict, this appeal was taken.

*Smith & Salomon*, for appellants.

*Ogden, Brown & Ogden*, for respondent:

Although there might have been a balance, on the general account between the parties, due to the plaintiffs, they have not sued for such balance, and cannot recover it in this action. There was a running account between the parties, upon which the drafts were credited, and a general balance struck by the plaintiffs. This was binding upon them, and they could not select from this general account a single item upon which to sue. The payments were made as well upon that item as all others; the act of the plaintiffs, in suing upon that item alone, amounts to an abandonment of all the others; and if payments applicable upon the entire account are proved to an amount exceeding the item sued on, the plaintiffs cannot resort to the items not declared on, to increase their claim. The defendant has a right to notice, by the declaration, of the entire claim, so that he may disprove any item that is wrong.

June 4.     *By the Court,* DIXON, C. J. This is the fourth time this case has been before this court. Whatever might have been our views as to the construction and effect of the original contract between the parties, were the question *res integra*, it must now, in view of the former adjudications, be regarded as *res adjudicata.*

By those adjudications, (4 Wis., 154, 5 id., 62, and 6 id., 28,) it is established that there was an absolute contract

between them, upon which the defendant was liable to
pay the plaintiffs for the salt, notwithstanding it was lost
in transitu, unless the defendant could show that they had
received payment by the money secured upon the policy of
insurance; and that the defendant is entitled to the ac-
ceptance of the insurance company, for the amount of the
loss as adjusted by the plaintiffs. This last proposition
seems to establish also, that the defendant is entitled to
the certificate of the receiver of the insurance company
given for the acceptance, and noted on the back of it.
We do not propose to enter into any discussion of the
correctness of either of these propositions. Upon the trial,
the plaintiffs complied with the last, both with respect to
the acceptance and certificate, provided those produced and
offered to the defendant were the same received by the
plaintiffs, upon which some doubts were raised. Without
giving our own impression, formed ;from the evidence as it
appears before us, upon this question of identity, we think
that the circuit judge erred in refusing the ninth instruction
asked by the plaintiffs' counsel, to-wit: *that the fact that the*
*words, "loss or damage by fire," are found in the certificate of*
*the receiver, is not conclusive evidence that the claim certified*
*originated in a loss by fire.* It certainly needs no argument
or citation of authorities to show that such recital in the cer-
tificate was not conclusive, and that it might be shown that
it was not a loss by fire, and that it was so recited by mis-
take. It is contended by the counsel for the defendant, that
the error committed by this refusal, was rectified in a subse-
quent portion of the charge, where, he says, it was in sub-
stance given. We do not think so. The instruction asked,
which was correct, was plainly and pointedly refused. The
subsequent instructions, in which the jury were told, that in
determining the question of identity, they could consider as
strong circumstances, the coincidence of dates, names, signa-
tures, amounts, &c., it is true, look as if it was intended to
submit to them the question of identity, notwithstanding
the recital; yet from the manner in which they were given,
we do not think they were calculated completely to remove
from the minds of the jurors, the impression which they

must have received from such refusal. The jury were not directly told, that if, in their opinion, from the evidence before them, the draft and certificate were given in settlement for the loss of the salt, then their verdict should be for the plaintiffs. Indeed, some portions of the subsequent instructions seem to have an opposite tendency. They were told that there was no explanation of the mistake in the certificate, unless, indeed, they could draw it from the face of the draft, and other parts of the certificate, and that they must take all written instruments in their plain and obvious meaning. This language can hardly be said to be equivalent to giving the instruction asked by the plaintiffs' counsel.

The only other feature in which the case differs from what it was when heretofore before this court, grows out of the introduction in evidence of the statement of account, furnished by the plaintiffs to the defendant, in the letter of January 31st, 1852. The letter in which the balance claimed to be due is stated, and in which it is said the account is inclosed, was in evidence, as appears from the case reported in 5 Wis. We do not see how this varies the case. It is contended that the draft of $1500 appearing as a general credit in this statement of accounts, is conclusive proof as against the plaintiffs, that the moneys received upon it were applied generally to the account, and that the plaintiffs could not afterwards select a single item, less in amount than the general balance claimed to be due, and sue upon it, but must sue, if at all, for such balance. If this question is not to be regarded as settled by former adjudications in this case, still we do not think the proposition is correct particularly where, as in this case, it appears that the selected item sued upon, is the only one in the whole account about which there is any dispute between the parties. Certainly the defendant cannot complain at this course of proceeding. He is not wronged by it. If after having furnished such statement, the plaintiffs had sought to apply the payment to the disputed or doubtful item, and had then brought suit upon one about which there was no dispute, thus endeavoring to shun an investigation of the

doubtful item, there would be some reason for the rule. But here there is none.

The judgment must be reversed, and a new trial awarded.